SHERWOOD W. MATHIS and LaVONNE E. MATHIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; SHERWOOD W. MATHIS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mathis v. Commissioner
Docket Nos. 1974-79, 12663-80, 16914-80, 25446-81.
United States Tax Court
T.C. Memo 1986-210; 1986 Tax Ct. Memo LEXIS 396; 51 T.C.M. (CCH) 1067; T.C.M. (RIA) 86210; May 27, 1986. Sherwood W. Mathis, pro se. James J. Everett, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: In these consolidated cases, respondent determined deficiencies in petitioners' Federal income taxes as follows: Petitioner(s)
Docket No.
Year
Deficiency
Sherwood W. and
1974-79
1975
$5,303.64
LaVonne E. Mathis
Sherwood W. and
12663-80
1976
13,412.00
LaVonne E. Mathis
Sherwood W. Mathis
16914-80
1977
13,547.00
Sherwood W. Mathis
25446-81
1978
5,530.00
1979
3,603.00
After concessions, the issues remaining for decision are: (1) whether petitioners are entitled to deduct as charitable contributions deposits made during 1975 through 1979 to bank accounts of Full Circle Universal Life Church; (2) whether petitioner, Sherwood *398 W. Mathis (Mathis), is entitled to deduct in 1977, 1978 and 1979 as charitable contributions certain rents due him under a lease which he forgave; and (3) whether petitioner is entitled to a bad debt deduction for the taxable year 1978. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation and exhibits associated therewith are incorporated herein by reference. Petitioners filed all four of their petitions herein before December 31, 1982, and while they were residents of Iowa. They filed joint income tax returns on the cash basis for the years 1975 and 1976. They also filed an amended joint return on the cash basis for 1975. Mathis filed separate returns on the cash basis for the years 1977, 1978, and 1979. All of the returns were filed with the Kansas City Service Center. During 1975 through 1979, Mathis was employed as an electrician. Mrs. Mathis was a housewife. On May 5, 1975, Mathis "was ordained into the ministry" by the Universal Life Church, Inc. Modesto, California. On or about May 19, 1975, he received from Universal Life Church, Inc., Modesto, California what purports to be a charter to start a congregation of the Universal *399 Life Church, Inc. at Sergeant Bluff, Iowa. On August 30, 1975, Mathis opened both a savings account and a checking account for Full Circle Universal Life Church [1] at the Toy National Bank, Sioux City, Iowa. During the years under consideration Mathis and his wife were the only signatories on each account. However, the employer identification number of the Universal Life Church, Inc., Modesto, California was used on both accounts. During the years 1975 and 1976 petitioners maintained complete control over both accounts. During 1977 through 1979 Mathis alone exercised such control. At various times funds deposited into the accounts were used for the personal inurement of both petitioners. On their returns for 1975 and 1976, petitioners claimed deductions for charitable contributions in the following total amounts: Year
Deduction Claimed
1975
$16,402.00
1976
29,878.00
On his returns for 1977, 1978, and 1979 Mathis claimed deductions for charitable contributions in the following total amounts: Year
Deduction Claimed
1977
$23,696.00
1978
14,769.00
1979
13,125.00
*400 A portion of the deduction claimed by petitioners for each of the years 1975 through 1979 was represented by funds deposited by petitioners into the checking and savings accounts of Full Circle Universal Life Church. In 1981, respondent issued an adverse determination letter in which he concluded that Full Circle Universal Life Church was not an organization within the meaning of sections 501(a) and 501(c)(3). [2] Mathis thereafter petitioned this Court for a declaratory judgment with respect to the determination letter and we sustained respondent. Universal Life Church, Inc. (Full Circle) v. Commissioner,83 T.C. 292 (1984). During the years 1977, 1978 and 1979, Mathis as lessor leased certain property to Bishop's Attic III, a agency of Catholic Community Resources, Inc., a social service arm of the Roman Catholic Church. For the years 1977, 1978 and 1979, he forgave rental payments due under the lease in the respective amounts of $2,100; $9,000; and $9,000. He did not report the forgiven amounts as income, but included *401 such amounts in his deductions for charitable contributions. In 1972 Mathis as lessor entered into a lease covering real property located in Fairbanks, Alaska. In July 1975 he filed a complaint in the Superior Court for the State of Alaska to recover the past due rent under the lease, in the amount of $7,332. As of the date of trial he had not collected any part of the rent and his attorney had recommended in 1978 that he drop the lawsuit. Even though he had never reported the $7,332 as income, he claimed a bad debt deduction for that amount in 1978. Respondent disallowed the claimed deductions for contributions as well as the bad debt in their entirety. OPINION Generally speaking deductions are a matter of legislative grace and petitioners have the burden of proving that they have met all specific requirements. New Colonial Ice Co. v. Helvering,292 U.S. 435 (1934); Welch v. Helvering,290 U.S. 111 (1933). These rules apply with equal force to deductions claimed for charitable contributions. Davis v. Commissioner,81 T.C. 806, 815 (1983), *402 affd. without published opinion 767 F.2d 931 (9th Cir. 1985). Deposits Made to the Accounts of Full Circle Universal Life Church
At first petitioners contend that their deposits to the accounts of Full Circle Universal Life Church are deductible as contributions to that organization. Even if we assume that the deposits actually constituted contributions, which we are unable to do on this record, petitioners would fail because we have previously sustained respondent's determination that Full Circle Universal Life Church is not an orgaization within the meaning of sections 501(a) and 501(c)(3). Therefore, under section 170 even valid contributions to it are not deductible. Furthermore, we have repeatedly held that the exemption once held by the Universal Life Church of Modesto does not extend to such organizations as Full Circle. Davis v. Commissioner,supra.
Petitioners next contend that the contributions were made to the Universal Life Church, Inc. of Modesto, California, which had tax exempt status prior to its revocation on September 4, 1984. See Universal Life Church, Inc. v United States,372 F. Supp. 770 (E.D. Cal. 1974); *403 Announcement 84-90, 1984-36, I.R.B. 32 (Sept. 4, 1984). Petitioners, however, have failed to demonstrate that any contribution was made to the Modesto organization. Instead from the record as a whole it is obvious that the funds were deposited into accounts maintained in the name of Full Circle Church over which petitioners had complete control. Consequently, the use of the employer identification number of the Modesto organization on the accounts is meaningless in the absence of any proof that Modesto ever received any of the funds or exercised any control over the accounts. In fact, some, if not all, of the monies were used by petitioners for their own inurement. Since petitioners did not relinquish control over the accounts we find no bona fide gift was ever made. Davis v. Commissioner,supra at 817; Seed v. Commissioner,57 T.C. 265, 275 (1971); DeJong v. Commissioner,36 T.C. 896, 899 (1961), affd. 309 F.2d 373 (9th Cir. 1962). Therefore, respondent's disallowance of the deductions is sustained. Forgiven Rents
Mathis claims that he is entitled to deductions for charitable contributions under *404 section 170 for the rents forgiven by him under the lease with Bishop's Attic III. Respondent agrees that rents in the respective amounts of $2,100; $9,000; and $9,000 were forgiven in 1977, 1978 and 1979. He also concedes that the lessee to whom the rents were forgiven qualifies under section 170 to receive tax deductible contributions. Respondent contends, however, that the deductions are not allowable because petitioner, being on the cash basis, never reported any of the forgiven payments as income. We agree with respondent not only because the deduction is contrary to cash basis accounting, but also because the transaction constitutes a contribution of a partial interest in property for which a deduction is denied under section 170(f)(3), the pertinent portion of which is as follows: (3) Denial of deduction in case of certain contributions of partial interests in property.-- (A) In general.--In the case of a contribution (not made by a transfer in trust) of an interest in property which consists of less than the taxpayer's entire interest in such property, a deduction shall be *405 allowed under this section only to the extent that the value of the interest contributed would be allowable as a deduction under this section if such interest had been transferred in trust. For purposes of this subparagraph, a contribution by a taxpayer of the right to use property shall be treated as a contribution of less than the taxpayer's entire interest in such property. (B) Exceptions.--Subparagraph (A) shall not apply to-- (i) a contribution of a remainder interest in a personal residence or farm, (ii) a contribution of an undivided portion of the taxpayer's entire interest in property, and (iii) a qualified conservation contribution. Section 1.170A-7(a)(1), Income Tax Regs. provides: (a) In general. (1) In the case of a charitable contribution, not made by a transfer in trust, of any interest in property which consists of less than the donor's entire interest in such property, no deduction is allowed under section 170 for the value of such interest unless the interest is an interest described in paragraph (b) of this section. See section *406 170(f)(3)(A). For purposes of this section, a contribution of the right to use property which the donor owns, for example, a rent-free lease, shall be treated as a contribution of less than the taxpayer's entire interest in such property. [Emphasis added.] Section 1.170A-7(d), Income Tax Regs. further illustrates the application of section 170(b)(3) follows: (d) Illustrations. The application of this section may be illustrated by the following examples: Example (1). A, an individual owning a 10-story office building, donates the rent-free use of the top floor of the building for the year 1971 to a charitable organization. Since A's contribution consists of a partial interest to which section 170(f)(3)(A) applies, he is not entitled to a charitable contributions deduction for the contribution of such partial interest. [Emphasis added.] On this issue, we conclude that Mathis falls squarely within section 170(b)(3) and section 1.170A-7(d)(1), Income Tax Regs. and is not entitled to deduct the forgiven rental payments. Bad Debt
Mathis agrees that the amount involved in this issue consists *407 of rental payments which were never received or reported by him as income. Therefore, his bad debt deduction for such amounts in 1978 is not allowable because "[w]orthless debts arising from * * * rents, * * * shall not be allowed as a deduction under section 166 unless the income such items represent has been included in the return of income for the year for which the deduction as a bad debt is claimed or for a prior taxable year." Section 1.166-1(e), Income Tax Regs. See also Odom v. Commissioner,T.C. Memo. 1979-53, affd. without published opinion 707 F.2d 508 (4th Cir. 1983). Decisions will be entered under Rule 155.
[3]
*408 . Footnotes
1. Other names used by petitioners for the "church" were Universal Life Church, Inc. (Full Circle) and simply Full Circle.↩
2. All section references are to the Internal Revenue Code of 1954, as amended, during the years in issue unless otherwise indicated.↩
3. In each of the consolidated dockets before us, petitioners have asserted groundless and frivolous arguments not only with respect to the contributions made to the alleged church but also with respect to their alleged beliefs in a constitutional right to a jury trial and their inability to proceed with the case without violating their constitutional privileges under the Fifth Amendment. They have persisted in such tactics even after being advised that their constitutional beliefs were baseless and after unsuccessfully litigating the exempt status of their church. In somewhat similar situations we have imposed damages sua sponte under section 6673. See Witherow v. Commissioner,T.C. Memo. 1985-223; Green v. Commissioner,T.C. Memo. 1985-200↩. However, in each of these dockets petitioners raised one or more valid issues in addition to their baseless arguments and on some issues have actually succeeded in gaining concessions from respondent. Consequently, we refrain from imposing damages in these cases.